**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| ANGELA CARTER, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>AHOLD DELHAIZE USA SERVICES, LLC,<br><br>Defendant. | **Case No.**<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Angela Carter ("Plaintiff"), through her attorneys, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant Ahold Delhaize USA Services, LLC ("Ahold Delhaize" or "Defendant"), and its present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities. Plaintiff alleges the following on information and belief—except as to their own actions, counsel's investigations, and facts of public record.

## INTRODUCTION

1. Plaintiff and the proposed Class Members bring this class action lawsuit on behalf of all persons who entrusted Defendants with sensitive Personally Identifiable Information ("PII") and Protected Health Information ("PHI") (collectively, "Sensitive Personal Information") that was impacted in a data breach that Defendant publicly disclosed in June 2025.

2. Defendant is the parent company of numerous retail grocery stores throughout the United States-including Food Lion, Giant Food, and The GIANT Company.[1]

3. As a result, Defendant maintains a vast amount of PII and PHI pertaining to its current and former employees. However, Defendant lost control of this data when cybercriminals infiltrated its inadequately secured computer systems in a data breach (the "Data Breach").

4. It remains unclear how long cybercriminals had unfettered access to Defendant's network before the breach was discovered. In other words, Defendant lacked effective safeguards to prevent, detect, stop, or mitigate intrusions—thereby enabling unauthorized access to the PHI and PII of its current and former employee.

5. Cybercriminals were able to infiltrate Defendant's systems because Defendant failed to adequately train its employees on cybersecurity practices and neglected to implement reasonable security safeguards or protocols to protect the Class's Sensitive Personal Information. In short, Defendant's systemic failures left the Class's sensitive information exposed and made them easy targets for cybercriminals.

6. The exposure of an individual's PII and PHI to cybercriminals is a bell that cannot be unrung. Prior to the breach, Defendant's current and former employees' sensitive information was private. That is no longer the case. As a result of Defendant's failures, their personal data is now permanently exposed and vulnerable to misuse.

**PARTIES**

[1] *About Us,* Ahold Delhaize, https://www.adusa.com/ (last visited June 30, 2025).

7. Plaintiff Angela Carter is a natural person and citizen of Maryland where she intends to remain.

8. Defendant, Ahold Delhaize USA Services, LLC, is a limited liability company formed under the laws of Delaware and with its principal place of business at 2110 Executive Drive, Salisbury, North Carolina 28147.[2]

**JURISDICTION AND VENUE**

9. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Members of the proposed Class are citizens of different states than Defendant. And there are over 100 putative Class Members.

10. This Court has personal jurisdiction over Defendant because it is headquartered in North Carolina, regularly conducts business in North Carolina, and has sufficient minimum contacts in North Carolina.

11. Venue is proper in this Court because Defendant's principal office is in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

---

[2] Under the Class Action Fairness Act, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10). *See also Ferrell v. Express Check Advance of S.C. LLC*, 591 F.3d 698, 700 (4th Cir. 2010) ("[A] limited liability company is an 'unincorporated association' as used in § 1332(d)(10), whose citizenship is that of the State under whose laws it is organized and the State where it has its principal place of business."). Accordingly, as an LLC, Defendant Ahold Delhaize USA Services, LLC is a citizen of both Delaware (its state of formation) and North Carolina (its principal place of business)

## FACTUAL BACKGROUND

### *A. Defendant Collected and Retained the Sensitive Personal Information of Plaintiff and the Class*

12. Ahold Delhaize is the parent company of numerous retail grocery stores throughout the United States-including Food Lion, Giant Food, and The Giant Company.[3]

13. In the course of its business, Defendant collects and maintains the Sensitive Personal Information of thousands of current and former employees.

14. In collecting and maintaining the Sensitive Personal Information, Defendant agreed it would safeguard the data in accordance with its internal policies, state law, and federal law. After all, Plaintiff and Class Members themselves took reasonable steps to secure their Sensitive Personal Information.

15. Under state and federal law, businesses like Defendant have duties to protect its current and former employees' Sensitive Personal Information and to notify them about breaches.

16. Defendant acknowledges its obligations to safeguard personal information, stating in its Privacy Policy: "Ahold Delhaize USA Services, LLC ('ADUSA') respects your concerns about privacy." The Policy further assures: "We do not disclose personal information we obtain about you, except as described in this Privacy Statement," and claims that ADUSA "maintain[s] administrative, technical, and physical safeguards

---

[3] *See* FN 1, *supra*.

designed to protect the personal information you provide against accidental, unlawful, or unauthorized access, destruction, loss, alteration, or disclosure . . . ."[4]

### *B. The Data Breach*

17. On November 5, 2024, Defendant was hacked in the Data Breach.[5]

18. Defendant has already acknowledged several critical facts confirming the scope and nature of the breach. It admits that Ahold Delhaize USA Services, LLC ("ADUSA") provides support services to various affiliated companies, including Food Lion, Giant Food, The GIANT Company, Hannaford, Stop & Shop, ADUSA Distribution, and ADUSA Transportation. Defendant disclosed that it detected a cybersecurity issue involving unauthorized access to its internal U.S. business systems on November 6, 2024. Its investigation revealed that an unauthorized third party accessed and obtained certain files from one of its internal U.S. file repositories between November 5 and 6, 2024. Defendant further admitted that some of these files contained personal information obtained while providing services to current and former Ahold Delhaize USA companies. The impacted individuals include current and former employees, their dependents, beneficiaries, and others whose personal information was stored in the compromised files. The affected data relates to a wide array of entities serviced by ADUSA, including but not limited to Ahold Delhaize USA Distribution, LLC; Ahold Delhaize USA Supply Chain Services, LLC; Ahold Delhaize USA Transportation, LLC; Ahold Delhaize USA, Inc.; Ahold e-Commerce Sales Company, LLC; Ahold Financial Services, LLC; Food Lion,

---

[4] *Privacy Policy,* Ahold Delhaize (April 1, 2024) https://www.adusa.com/privacy-policy/.
[5] *Notice of Data Breach,* Ahold Delhaize (June 26, 2025) https://www.adusaservices.com/.

LLC; Giant of Maryland, LLC; The Giant Company, LLC; Hannaford Bros. Co., LLC; The Stop & Shop Supermarket Company, LLC; Peapod, LLC; and dozens of other affiliates, subsidiaries, and independently operated stores. Because of Defendant's Data Breach, at least the following types of PII and PHI were compromised: "name, contact information (for example, postal and email address and telephone number), date of birth, government-issued identification numbers (for example, Social Security, passport and driver's license numbers), financial account information (for example, bank account number), health information (for example, workers' compensation information and medical information contained in employment records) and employment-related information."[6]

19. Notwithstanding, Defendant waited seven months, until June 26, 2025, before it began notifying the class—over 230 days after the Data Breach began.[7]

20. Thus, Defendant kept the Class in the dark—thereby depriving the Class of the opportunity to try and mitigate their injuries in a timely manner.

21. And when Defendant did notify Plaintiff and the Class of the Data Breach, Defendant acknowledged that the Data Breach created a present, continuing, and significant risk of suffering identity theft, warning Plaintiff and the Class: "We encourage affected individuals to remain vigilant by reviewing their account statements and monitoring their free credit reports."[8]

---

[6] *Id.*
[7] *See* FN 5, *supra.*
[8] *Id.*

22. Ahold Delhaize failed its duties when its inadequate security practices caused the Data Breach. In other words, Defendant's negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from accessing the Sensitive Personal Information. And thus, Defendant caused widespread injury and monetary damages.

23. Since the breach, Defendant claims that "[w]e take this issue extremely seriously and will continue to take actions to further protect our systems."[9]

24. But such simple declarations are insufficient to ensure that Plaintiffs and Class Members' Sensitive Personal Information will be protected from additional exposure in a subsequent data breach.

25. Further, the Notice of Data Breach shows that Defendant cannot-or will not-determine the full scope of the Data Breach, as Defendant has been unable to determine precisely what information was stolen and when.

26. Defendant has done little to remedy its Data Breach. True, Defendant has offered some victims credit monitoring and identity related services. But upon information and belief, such services are wholly insufficient to compensate Plaintiff and Class Members for the injuries that Defendant inflicted upon them.

27. Because of Defendant's Data Breach, the Sensitive Personal Information of Plaintiff and Class Members was placed into the hands of cybercriminals-inflicting numerous injuries and significant damages upon Plaintiff and Class Members.

[9] *Id.*

### *C. Ransom Demands and Dark Web Exposure*

28. Upon information and belief, the cybercriminal group responsible for the breach is "INC Ransom," a well-known and sophisticated ransomware organization that has previously targeted major institutions and is known to traffic in stolen personal and medical data."[10]

29. On April 16, 2025, INC Ransom publicly claimed responsibility for the attack and stated that "Ahold Delhaize become [sic] a victim of the largest data breach," further threatening that "6TB [of] sensitive data will be published soon in our blog." This statement strongly suggests not only unauthorized access but also an imminent public disclosure or sale of the compromised data—including the PII and PHI of Plaintiffs and Class Members—on the dark web."[11]

30. The volume of stolen data and the direct threat of publication by a known cybercriminal actor makes the risk of identity theft and misuse of sensitive information far from speculative. It demonstrates a credible and substantial threat, and Plaintiffs and Class Members face a continued and imminent risk of harm from the exposure of their Sensitive Personal Information to malicious actors.

31. As a result, Plaintiffs and Class Members have already taken steps—including ongoing monitoring of financial accounts, securing personal information, and

---

[10] Paul Bischoff, *Food seller Ahold Delhaize notifies 2.2 million people of data breach that compromised SSNs, financial and health info,* Comparitech (June 27, 2025) https://www.comparitech.com/news/food-seller-ahold-delhaize-notifies-2-2-million-people-of- data-breach-that-compromised-ssns-financial-and-health-info/.

[11] *Id.*

expending time and money to mitigate the risk—to protect themselves from identity theft and other potential misuse, further evidencing concrete injury

***D. Plaintiff Carter's Experiences***

32. Plaintiff previously worked for Defendant at its Ahold Delhaize warehouse facility in Jessup, Maryland, during which time she provided personal and employment-related information to Defendant as a condition of her employment.

33. Plaintiff is meticulous about protecting the privacy and security of her Sensitive Personal Information. She does not knowingly transmit such data over unsecured networks or store it in unprotected digital or physical locations. She takes affirmative steps to safeguard her personal and financial data from misuse.

34. Plaintiff provided her Sensitive Personal Information to Defendant with the reasonable expectation that it would be maintained securely and in compliance with Defendant's internal policies, industry standards, and applicable state and federal privacy laws. At all relevant times, Defendant collected and retained Plaintiff's Sensitive Personal Information and owed her a continuing legal duty to protect it from unauthorized access and disclosure.

35. Plaintiff reasonably believed that part of the compensation she earned was allocated to the cost of maintaining appropriate cybersecurity infrastructure, policies, and practices to protect her Sensitive Personal Information.

36. Upon information and belief, Plaintiff's Sensitive Personal Information was accessed and exfiltrated in the Data Breach and is either already being sold or imminently will be published by cybercriminals on the dark web, including by the ransomware group

"INC Ransom," which has openly threatened to disclose a massive cache of Defendant's compromised data.

37. Through this Data Breach, Defendant compromised Plaintiff's most sensitive data—including her name, address, Social Security number, and possibly employment and health-related records—placing her at significant and ongoing risk of identity theft and fraud.

38. As a direct result, Plaintiff has already spent—and will continue to spend—substantial time, energy, and out-of-pocket resources monitoring financial accounts, placing credit freezes, securing personal records, and exploring identity theft protection services. These steps are necessary to guard against fraud, as explicitly recommended by Defendant in its breach notification.

39. Plaintiff is deeply concerned about the nature and extent of the data exposed in the breach. She fears for her personal and financial safety, and lives with the anxiety that her information may already be circulating among malicious actors or fraud networks.

40. The Data Breach has caused Plaintiff to suffer emotional distress, including anxiety, stress, fear, and sleep disruption. These injuries are concrete, particularized, and cognizable under law—they go far beyond mere inconvenience or speculative concern.

41. Plaintiff has suffered actual injury in the form of loss of control over her Sensitive Personal Information, the diminished value of that data, and the burden of mitigation efforts she must undertake to protect herself from further harm.

42. Plaintiff reasonably anticipates continuing to incur significant costs in time and money to monitor and secure her identity and financial well-being. These mitigation measures are a direct result of Defendant's failure to prevent the Data Breach.

43. Plaintiff also has a strong ongoing interest in ensuring that her Sensitive Personal Information—much of which, upon information and belief, remains stored in Defendant's internal systems and backups—is protected against future unauthorized access, use, or disclosure.

### *E. Data Security Tops Consumer Priorities*

44. In 2024, the technology and communications conglomerate Cisco published the results of its multi-year "Consumer Privacy Survey."[12] Therein, Cisco reported the following:

a. "For the past six years, Cisco has been tracking consumer trends across the privacy landscape. During this period, privacy has evolved from relative obscurity to a customer requirement with more than 75% of consumer respondents saying they won't purchase from an organization they don't trust with their data."

b. "Privacy has become a critical element and enabler of customer trust, with 94% of organizations saying their customers would not buy from them if they did not protect data properly."

[12] *Privacy Awareness: Consumers Taking Charge to Protect Personal,* Cisco, https://www.cisco.com/c/dam/en_us/about/doing_business/trust-center/docs/cisco-consumer- privacy-report-2024.pdf (last visited June 30, 2025).

c. 89% of consumers stated that "I care about data privacy."

d. 83% of consumers declared that "I am willing to spend time and money to protect data" and that "I expect to pay more" for privacy.

e. 51% of consumers revealed that "I have switched companies or providers over their data policies or data-sharing practices."

f. 75% of consumers stated that "I will not purchase from organizations I don't trust with my data."[13]

### *F. Plaintiff and Class Members Face an Ongoing, Imminent, and Substantial Risk of Identity Theft and Fraud*

45. As a direct result of Defendant's failure to prevent the Data Breach, Plaintiff and Class Members have suffered—and will continue to suffer—damages, including monetary losses, lost time, anxiety, and emotional distress. They have also experienced, or are at heightened risk of experiencing: (a) loss of the opportunity to control how their PHI is used; (b) diminution in the value of their PHI; (c) the compromise and ongoing exposure of their PHI; (d) out-of-pocket expenses incurred in efforts to prevent, detect, and recover from identity theft and fraud; (e) lost opportunity costs and wages associated with time spent mitigating the consequences of the Data Breach, including efforts to prevent, detect, contest, and recover from identity theft and fraud; (f) delayed receipt of tax refunds; (g) unauthorized use of their stolen PHI; and (h) continued risk to their PHI—which remains in Defendant's possession and therefore vulnerable to future breaches so long as Defendant

[13] *Id.*

fails to implement adequate safeguards. Stolen PHI and PII is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PH/PHI can be worth up to $1,000.00 depending on the type of information obtained.

46. The Sensitive Personal Information of Plaintiff and the Class holds significant value on the black market. Stolen PII and PHI can be traded for years, and criminals often openly post and sell this information on the Dark Web, further increasing the risk of exposure and misuse.

47. Accordingly, victims of identity theft and fraud often do not discover the misuse of their information for years, giving cybercriminals ample time to exploit, misuse, and widely disseminate the stolen Sensitive Personal Information on the dark web and beyond.

48. One common method criminals use to profit from stolen PII and PHI is by creating detailed identity dossiers known as "Fullz" packages. These comprehensive and highly accurate profiles are assembled by cross-referencing stolen data with publicly available information—such as phone numbers, email addresses, and physical addresses—resulting in complete identities that are highly valuable and easily sold on illicit marketplaces.

49. The creation of "Fullz" packages means that the PII and PHI exposed in the Data Breach can be easily linked to other publicly available information about Plaintiff and Class Members, significantly increasing the risk of identity theft, fraud, and other forms of exploitation.

50. Defendant's actions resulted in the unauthorized disclosure of Plaintiff and Class Members' Sensitive Personal Information, effectively enabling criminals to exploit this sensitive information for unlawful purposes. By failing to safeguard the data, Defendant exposed it to individuals engaged in criminal and disruptive activities, including online account hacking, unauthorized access to financial accounts, and the fraudulent opening of new accounts—all forms of identity fraud facilitated by the stolen Sensitive Personal Information.

51. Defendant's failure to promptly notify Plaintiff and Class Members of the Data Breach significantly worsened their injuries by depriving them of the earliest opportunity to safeguard their Sensitive Personal Information and take critical steps to mitigate the resulting harm. This delay left their sensitive information exposed and unprotected, increasing the likelihood and severity of identity theft, fraud, and other related damages.

### ***G. Ahold Delhaize Knew or Should Have Foreseen the Risk of a Data Breach***

52. Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in recent years.

53. In 2021, a record 1,862 data breaches occurred, exposing approximately 293,927,708 sensitive records-a 68% increase from 2020.[14]

---

[14] *See* Identity Theft Resources Center, *https://www.idtheftcenter.org/post/identity-theft-resource-center-2021-annual-data-breach-report-sets-new-record-for-number-of-compromises/#:~:text=According%20to%20the%202021%20Annual,compromises%20in%202020%20(1%2C108).* (last accessed July 1, 2025)

54. Cyberattacks have become so prevalent that agencies such as the FBI and U.S. Secret Service regularly warn potential targets to increase their awareness and preparedness against possible attacks. Smaller organizations, including municipalities and hospitals, are particularly appealing to ransomware attackers because they typically have weaker IT security measures and face pressure to restore access to their data quickly.

55. Defendant's failure to use reasonable and appropriate measures to protect against unauthorized access to its current and former employees' data constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

### *H. Ahold Delhaize Failed to Adhere To Industry Standards*

56. Industry standards establish several best practices that businesses like Defendant should implement to protect sensitive data. These include employee education, the use of strong passwords, multi-layered security systems (such as firewalls, antivirus, and anti-malware software), data encryption, multi-factor authentication, regular data backups, and restricting access to sensitive information to only those employees who need it.

57. Additional industry-standard best practices include installing robust malware detection software; monitoring and restricting network ports; securing web browsers and email systems; properly configuring network infrastructure such as firewalls, switches, and routers; safeguarding physical security systems; protecting all communication channels; and training staff on key vulnerabilities and security protocols.

58. Upon information and belief, Defendant failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both

the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01,

PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04)

and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

59. These frameworks are applicable and accepted industry standards. And by failing to comply with these accepted standards, Defendant opened the door to the criminals-thereby causing the Data Breach.

### *I. Ahold Delhaize Violated HIPAA*

60. HIPAA outlines security provisions and data privacy obligations intended to safeguard patients' medical information. Its compliance requirements—commonly referred to as the Administrative Simplification Rules—establish national standards for electronic transactions and code sets to ensure the privacy and security of protected health information.

61. HIPAA provides specific privacy rules that require comprehensive administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of Sensitive Personal Information is properly maintained.[15]

---

[15] *See* 45 C.F.R. § 164.306 (security standards and general rules); 45 C.F.R. § 164.308 (administrative safeguards); 45 C.F.R. § 164.310 (physical safeguards); 45 C.F.R. § 164.312 (technical safeguards).

62. The Data Breach resulted from multiple deficiencies that reflect Defendant's failure to implement the safeguards required by HIPAA. These failures include, among other things: not ensuring the confidentiality and integrity of electronic protected health information ("ePHI") as required by 45 C.F.R. § 164.306(a); not protecting against reasonably anticipated threats, hazards, or impermissible uses and disclosures of ePHI; not ensuring workforce compliance with HIPAA security standards; not implementing proper technical controls to restrict system access to authorized users; not establishing adequate policies and procedures to prevent, detect, and respond to security violations; failing to investigate and mitigate known or suspected security incidents; failing to provide necessary staff training on safeguarding PHI; and failing to implement and enforce physical and administrative safeguards to protect PHI, as required under 45 C.F.R. §§ 164.308, 164.312, and 164.530. Simply put, the Data Breach resulted from a combination of insufficiencies that demonstrate Defendant failed to comply with safeguards mandated by HIPAA regulations.

## CLASS ACTION ALLEGATIONS

63. Plaintiff brings this class action under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of all members of the following class:

> **All individuals residing in the United States whose PII and/or PHI was compromised in the data breach discovered by Ahold Delhaize in November 2024, including all individuals who received notice of the breach.**

64. Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer

or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

65. Plaintiff reserves the right to amend the class definition.

66. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of their claims on class-wide bases using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

67. **Ascertainability**. All members of the proposed Class are readily ascertainable from information in Defendant's custody and control. Defendant has already identified some individuals and sent them data breach notices.

68. **Numerosity.** The Class Members are so numerous that joinder of all Class Members is impracticable. Upon information and belief, the proposed Class includes at least 2,242,521 members.

69. **Typicality.** Plaintiff's claims are typical of Class Members' claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

70. **Adequacy.** Plaintiff will fairly and adequately protect the proposed Class's common interests. Their interests do not conflict with Class Members' interests. And Plaintiff has retained counsel-including lead counsel-that is experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf

71. **Commonality and Predominance**. Plaintiff and the Class's claims raise predominantly common fact and legal questions-which predominate over any questions

affecting individual Class Members-for which a class wide proceeding can answer for all Class Members. In fact, a class wide proceeding is necessary to answer the following questions:

a. whether Defendant had a duty to use reasonable care in safeguarding Plaintiff and the Class's PII and PHI;

b. whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c. whether Defendant were negligent in maintaining, protecting, and securing PII and PHI;

d. whether Defendant breached contract promises to safeguard Plaintiff and the Class's PII and PHI;

e. whether Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

f. whether Defendant's Breach Notice was reasonable;

g. whether the Data Breach caused Plaintiff and the Class injuries;

h. whether if Plaintiff and the Class are entitled to damages, treble damages, and or injunctive relief.

72. **Superiority.** A class action will provide substantial benefits and is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class Members are relatively

small compared to the burden and expense that individual litigation against Defendant would require. Thus, it would be practically impossible for Class Members, on an individual basis, to obtain effective redress for their injuries. Not only would individualized litigation increase the delay and expense to all parties and the courts, but individualized litigation would also create the danger of inconsistent or contradictory judgments arising from the same set of facts. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, ensures economies of scale, provides comprehensive supervision by a single court, and presents no unusual management difficulties.

**COUNT I**
**NEGLIGENCE**
**(On Behalf of Plaintiff and the Class)**

73. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

74. Plaintiff and the Class entrusted their Sensitive Personal Information to Defendant with the expectation and understanding that it would be securely protected, used solely for legitimate business purposes, and not disclosed to unauthorized third parties.

75. Defendant owed a duty of care to Plaintiff and the Class because it was reasonably foreseeable that failing to implement adequate data security measures—consistent with industry standards—would expose their Sensitive Personal Information to a data breach. That foreseeable risk materialized in this case.

76. Defendant was fully aware of the sensitivity of the Sensitive Personal Information it maintained, as well as the types of harm that Plaintiff and the Class could and would suffer if such information were improperly disclosed.

77. Defendant owed these duties to Plaintiff and Class Members because they belong to a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer actual harm from its inadequate security practices. Indeed, Defendant actively solicited and collected Plaintiff and Class Members' Sensitive Personal Information, placing them at direct risk.

78. Defendant owed Plaintiff and Class Members, at a minimum, the following duties: to exercise reasonable care in collecting, handling, and safeguarding the Sensitive Personal Information in its custody; to implement industry standard security measures sufficient to reasonably protect that information from data breaches, theft, or unauthorized access; to promptly detect and respond to any attempted unauthorized access; and to notify Plaintiff and Class Members of any breach of their Sensitive Personal Information within a reasonable timeframe.

79. Accordingly, Defendant owed a duty to promptly and accurately disclose to Plaintiff and Class Members the scope, nature, and occurrence of the Data Breach. This disclosure was essential to enable Plaintiff and Class Members to take appropriate steps to protect their Sensitive Personal Information, remain vigilant against increased risks, and mitigate the resulting harm.

80. Defendant also had a duty to exercise appropriate clearinghouse practices to remove Sensitive Personal Information it was no longer required to retain under applicable regulations.

81. Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the Sensitive Personal Information of

Plaintiff and the Class involved an unreasonable risk of harm to Plaintiff and the Class, even if the harm occurred through the criminal acts of a third party.

82. Defendant's duty to implement reasonable security measures arose from the special relationship between Defendant and Plaintiff and the Class. This relationship was established when Plaintiff and the Class—or their authorized agents—entrusted Defendant with their confidential Sensitive Personal Information as a necessary condition for receiving Defendant's service.

83. The risk that unauthorized individuals would attempt to access and misuse Plaintiff's and Class Members' Sensitive Personal Information was entirely foreseeable. Given that Defendant stores vast amounts of Sensitive Personal Information, it was only a matter of time before malicious actors—whether through malware or other means—would target Defendant's systems in an effort to obtain that data.

84. PII and PHI are highly valuable, and Defendant knew or should have known the risks associated with collecting, using, handling, transmitting, and storing such information. Defendant also knew—or should have known—the critical importance of exercising reasonable care in protecting the Sensitive Personal Information of Plaintiff and Class Members.

85. Defendant breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing the personal information and Sensitive Personal Information of Plaintiff and Class Members which actually and proximately caused the Data Breach and Plaintiff and Class Members' injury.

86. Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and Class Members, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff and Class Members' injuries-in-fact.

87. Defendant has admitted that the Sensitive Personal Information of Plaintiff and the Class was wrongfully lost and disclosed to unauthorized third persons because of the Data Breach.

88. As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiff and Class Members have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

89. Defendant’s breach of its common-law duties to exercise reasonable care—through its acts of negligence and failures—actually and proximately caused Plaintiff and Class Members to suffer concrete, tangible injuries and damages. These include, without limitation, the theft and improper disclosure of their Sensitive Personal Information, loss of the benefit of their bargain, diminished value of their Sensitive Personal Information, and significant time and money spent mitigating and remediating the effects of the Data Breach. These injuries are ongoing, imminent, and continuing.

**COUNT II**
**NEGLIGENCE *PER SE***
**(On Behalf of Plaintiff and the Class)**

90. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

91. Under the FTC Act, 15 U.S.C. § 45, Defendant had a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiffs and Class Members' Sensitive Personal Information.

92. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted, and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect the Sensitive Personal Information entrusted to it. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiff and the Class Members' Sensitive Personal Information.

93. Defendant breached its respective duties to Plaintiff and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard PII and PHI.

94. Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect PII and PHI and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII and PHI Defendant had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

95. The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and

avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and members of the Class.

96. But for Defendant's wrongful and negligent breach of its duties owed, Plaintiff and Class Members would not have been injured.

97. The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendant's breach of their duties. Defendant knew or should have known that Defendant was failing to meet its duties and that its breach would cause Plaintiff and members of the Class to suffer the foreseeable harms associated with the exposure of their Sensitive Personal Information.

98. Similarly, under HIPAA, Defendant had a duty to follow HIPAA standards for privacy and security practices-as to protect Plaintiff and Class Members' PHI.

99. Defendant violated its duty under HIPAA by failing to implement reasonable safeguards to protect PHI and by failing to comply with applicable regulations as detailed above. Defendant’s conduct was especially egregious given the volume and sensitivity of the PHI it collected and maintained, and the foreseeable risk that a data breach would cause significant harm to affected individuals—harm that ultimately occurred.

100. As a direct and proximate result of Defendant’s negligence per se, Plaintiff and Class Members have suffered—and will continue to suffer—significant injuries, including but not limited to the ongoing risk of identity theft, loss of privacy, and other economic and non-economic harms.

## COUNT III
## Breach of Implied Contract
## (On Behalf of Plaintiff and the Class)

101. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

102. Plaintiff and Class Members either directly contracted with Defendant or Plaintiff and Class Members were the third-party beneficiaries of contracts with Defendant.

103. Plaintiff and Class Members were required to provide their Sensitive Personal Information to Defendant as a condition of receiving services and/or employment. They did so in reasonable reliance on Defendant's promise—express or implied—that their information would be safeguarded in accordance with applicable laws and industry standards.

104. Plaintiff and Class Members reasonably understood that a portion of the funds they paid and/or derived from their labor would be used to pay for adequate cybersecurity measures.

105. Plaintiff and Class Members reasonably understood that Defendant would use adequate cybersecurity measures to protect the Sensitive Personal Information that they were required to provide based on Defendant's duties under state and federal law and its internal policies.

106. Plaintiff and the Class Members accepted Defendant's offers by disclosing their Sensitive Personal Information to Defendant or its third-party agents in exchange for services and/or employment.

107. In sum, and through internal policies, Defendant agreed to protect and not disclose the Sensitive Personal Information to unauthorized persons.

108. In its Privacy Policy, Defendant represented that they had a legal duty to protect Plaintiffs and Class Member's Sensitive Personal Information.

109. Implicit in the parties' agreement was that Defendant would provide Plaintiff and Class Members with prompt and adequate notice of all unauthorized access and/or theft of their Sensitive Personal Information.

110. Plaintiff and Class Members would not have entrusted their Sensitive Personal Information to Defendant absent an agreement—express or implied—that Defendant would protect their sensitive information in accordance with legal and industry standards.

111. Plaintiff and the Class fully performed their obligations under the implied contracts with Defendant.

112. The covenant of good faith and fair dealing is an implied element of every contract, requiring that parties act honestly and fairly in the performance and enforcement of their contractual obligations. This duty extends beyond mere technical compliance with the contract's terms and demands that each party uphold the spirit and intent of the agreement. In essence, the parties are bound not only to the letter of the contract but also to its substance and purpose.

113. Deception and evasion violate the duty of good faith in performance, even if the actor believes their conduct is justified. Bad faith may be overt or take the form of deliberate inaction. Moreover, the obligation of fair dealing requires more than simple

honesty—it demands that parties act fairly and refrain from undermining the purpose and benefits of the contract.

114. Defendant materially breached its contracts with Plaintiff and Class Members by failing to safeguard their Sensitive Personal Information; failing to promptly notify them of the data breach; failing to adhere to industry standards; failing to comply with legal obligations incorporated into the agreements; and failing to maintain the confidentiality and integrity of the electronic data it created, received, stored, and transmitted. Through these and other acts and omissions, Defendant also breached its duty of good faith and fair dealing.

115. Defendant's material breaches were the direct and proximate cause of Plaintiff's and Class Members' injuries.

116. Upon information and belief, Plaintiff's Sensitive Personal Information has already been published—or will be published imminently—by cybercriminals on the Dark Web.

117. Plaintiff and Class Members performed as required under the relevant agreements, or such performance was waived by Defendant's conduct.

**COUNT IV**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

118. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

119. This claim is pleaded in the alternative to Count III (breach of implied contract).

120. Plaintiff and Class Members conferred a substantial benefit upon Defendant by providing their Sensitive Personal Information for the purpose of receiving services and/or facilitating employment. Defendant benefitted from this exchange by using their sensitive information to operate its business, derive revenue, and profit from their labor and, in some cases, their direct or indirect payments.

121. Defendant appreciated or had knowledge of the benefits it received from Plaintiff and Class Members.

122. Plaintiff and Class Members reasonably understood that Defendant would use adequate cybersecurity measures to protect the Sensitive Personal Information that they were required to provide based on Defendant's duties under state and federal law and its internal policies.

123. Defendant enriched itself by saving the costs they reasonably should have expended on data security measures to secure Plaintiffs and Class Members' Sensitive Personal Information.

124. Instead of providing a reasonable level of security, or retention policies, that would have prevented the Data Breach, Defendant instead calculated to avoid its data security obligations at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

125. Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiffs' and Class Members' Sensitive Personal

Information and the benefits of their employment and/or payments, given Defendant's failure to adequately protect that information as required by law and industry standards.

126. Plaintiff and Class Members have no adequate remedy at law.

127. Defendant should be compelled to disgorge all unlawful or unjust gains obtained through its misconduct into a common fund for the benefit of Plaintiff and Class Members.

**COUNT V**
**Violation of the North Carolina Unfair Trade Practices Act**
**N.C. Gen. Stat. Ann.§ 75-1.1**
**(On Behalf of Plaintiff and the Class)**

128. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

129. The North Carolina Unfair Trade Practices Act ("NCUTPA") establishes that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. Ann.§ 75-1.l(a).

130. Defendant violated the North Carolina Unfair and Deceptive Trade Practices Act (NCUTPA) by, among other things, failing to warn Plaintiffs and Class Members that their Sensitive Personal Information had been acquired by INC Ransom; failing to implement and maintain reasonable security and privacy measures to protect their Sensitive Personal Information, which directly and proximately caused the Data Breach; failing to identify foreseeable security and privacy risks, remediate known vulnerabilities, and strengthen safeguards following previous cybersecurity incidents, which also directly and

proximately contributed to the Data Breach; failing to comply with common law and statutory duties regarding the security and privacy of Plaintiffs' and Class Members' Sensitive Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681e, and the Gramm-Leach-Bliley Act (GLBA), 15 U.S.C. § 6801, et seq.; and by omitting, suppressing, and concealing the material facts that it had not adequately secured Plaintiffs' and Class Members' Sensitive Personal Information, nor complied with applicable legal and regulatory duties regarding the privacy and security of such information.

131. Defendant's omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of their Sensitive Personal Information.

132. Defendant intended to mislead Plaintiff and Class Members and induce them to rely on its omissions.

133. Had Defendant disclosed to Plaintiff and Class Members that its data systems were not secure-and thus vulnerable to attack-Defendant would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Defendant accepted the Sensitive Personal Information that Plaintiff and Class Members entrusted to it while keeping the inadequate state of its security controls secret from the public. Accordingly, Plaintiff and Class Members acted reasonably in relying on Defendant's omissions, the truth of which they could not have discovered through reasonable investigation.

134. Defendant acted intentionally, knowingly, maliciously, and recklessly disregarded Plaintiffs and Class Members' rights.

135. As a direct and proximate result of Defendant's unfair and deceptive acts and practices, Plaintiff and Class Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for

fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Sensitive Personal Information.

136. Upon information and belief, Plaintiff's Sensitive Personal Information has either already been—or is imminently at risk of being—exposed by cybercriminals on the Dark Web.

**COUNT VI**
**Declaratory Judgment**
**(On Behalf of Plaintiff and the Class)**

137. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

138. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.,* this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief The Court has broad authority to restrain acts, such as those alleged herein, which are tortious and unlawful.

139. In the aftermath of the Data Breach, a genuine controversy has arisen regarding Defendant's obligations to maintain reasonable data security. Upon information and belief, Plaintiff alleges that Defendant's actions have been—and continue to be—both inadequate and unreasonable. As a result, Plaintiff and Class Members continue to suffer harm from the ongoing risk of fraud and identity theft.

140. Pursuant to the Declaratory Judgment Act, this Court should declare that: (a) Defendant owed—and continues to owe—a legal duty to implement and maintain reasonable data security measures to protect the sensitive information entrusted to it; (b) Defendant has a duty under both common law and Section 5 of the FTC Act to notify affected individuals of the Data Breach; (c) Defendant breached—and continues to breach—these duties by failing to employ reasonable safeguards; and (d) Defendant's ongoing breaches have caused—and continue to cause—harm to Plaintiff and Class Members.

141. The Court should also issue corresponding injunctive relief requiring Defendant to use adequate security consistent with industry standards to protect the data entrusted to it.

142. If an injunction is not issued, Plaintiff and the Class will suffer irreparable injury and lack an adequate legal remedy if Defendant experiences a second data breach.

143. And if a second breach occurs, Plaintiff and the Class will lack an adequate remedy at law because many of the resulting injuries are not readily quantified in full and they will be forced to bring multiple lawsuits to rectify the same conduct. Simply put, monetary damages- while warranted for out-of-pocket damages and other legally

quantifiable and provable damages- cannot cover the full extent of Plaintiff and Class Members' injuries.

144. If an injunction is not issued, the resulting hardship to Plaintiff and Class Members far exceeds the minimal hardship that Defendant could experience if an injunction is issued.

145. An injunction would serve the public interest by preventing future data breaches and thereby protecting Plaintiff, Class Members, and the broader public from further harm.

## RELIEF REQUESTED

Plaintiff and Class Members respectfully request judgment against Defendant and that the Court enter an order:

A. Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as the class representative, and designating Plaintiff's counsel to represent the Class;

B. Awarding declaratory and other equitable relief as necessary to protect the rights and interests of Plaintiff and the Class;

C. Awarding injunctive relief as necessary to protect the interests of Plaintiff and the Class;

D. Enjoining Defendant from further unfair and/or deceptive practices;

E. Awarding Plaintiff and the Class all available damages, including compensatory, statutory, exemplary, and punitive damages, as permitted by law;

F. Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

G. Awarding attorneys' fees and costs, as allowed by law;

H. Awarding prejudgment and post-judgment interest, as provided by law;

I. Granting Plaintiff and the Class leave to amend this Complaint as necessary to conform to the evidence presented at trial; and

J. Granting such other and further relief as the Court deems just and appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial for all claims so triable.

Dated: July 2, 2025

Respectfully submitted,

*<u>/s/ Joel R. Rhine</u>*

Joel R. Rhine
NC State Bar No. 16028
Ruth Sheehan
NC State Bar No. 48069
**RHINE LAW FIRM, P.C.**
Email: ras@rhinelawfirm.com
jrr@rhinelawfirm.com
1612 Military Cutoff Road
Suite 300
Wilmington, NC 28403
Tel: (910) 772-9960
Fax: (910) 772-9062

Sabita J. Soneji*
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, CA 94612
Tel. 510-254-6808
ssoneji@tzlegal.com

Hassan A. Zavareei*
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Ave. NW, Suite 1010
Washington, D.C. 20006
Tel. 202-973-0900
hzavareei@tzlegal.com

**Pro hac vice forthcoming*
*Counsel for Plaintiff and the Proposed Class*